UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Theodora F. Antar | ) | Civil Action No. 3:23-cv-00983-JAM |
| Plaintiff | ) | |
| v. | ) | |
| Matthew J. Lodice | | |
| Defendant | ) | |

August 4th, 2023

# RESPONSE TO ORDER TO SHOW CAUSE: COURT'S INTENTION TO REMAND

The Plaintiff Theodora Antar hereby files the following as her response as a pro-se self-litigant timely, for fair consideration. The Plaintiff Theodora Antar seeks remand of this case to Federal Court based on the issues presented being based on federal questions of law, concurrent jurisdiction, and upon extraordinary circumstances for good cause shown.

## Motion to Withdraw State Court & Federal Jurisdiction

Federal question jurisdiction is one of the two ways for a federal court to gain subject matter jurisdiction over a case (the other way is through diversity jurisdiction). Generally, in order for federal question jurisdiction to exist, the cause of action must arise under federal law. More specifically, however, there are both constitutional and statutory requirements that must be met before jurisdiction can be found. The Plaintiff Theodora Antar has attempted to remove this case to the Connecticut Federal District Court and attempted to withdraw her case from the Connecticut Appellate Court in Hartford with prejudice.

## Interpreting "Arising Under" - Constitutional Requirement

1

Under Article III of the Constitution, Federal courts can hear "all cases, in law and equity, arising under this Constitution, [and] the laws of the United States..." US Const, Art III, Sec 2. The Supreme Court has interpreted this clause broadly, finding that it allows federal courts to hear any case in which there is a federal ingredient. *Osborn v. Bank of the United States,* 22 US 738 (1824).

### 28 USC §1331 - The Statutory Component

For federal question jurisdiction to exist, the requirements of 28 USC 1331 must also be met. This statute gives Federal courts jurisdiction only to those cases which "aris[e] under" federal law. 28 USC 1331. This requirement has been found to be narrower than the requirements of the Constitution. The Supreme Court has found that a "suit arises under the law that creates the cause of action," *American Well Works v. Layne*, 241 US 257 (1916), and therefore, only suits based on Federal law, not state lawsuits, are most likely to create Federal question jurisdiction, *Louisville & Nashville R. Co. v. Mottley*, 211 US 149 (1908).

### Well-Pleaded Complaint Test - Mottley Rule

Typically, in order to have Federal question jurisdiction, the plaintiff's complaint must be a well-pleaded one. This means that the plaintiff's initial complaint must contain references to the Federal question and the Federal issue evoked. The Federal question and issue cannot arise in an anticipated defense, it must be presented from the initial complaint. This requirement was established in *Louisville & Nashville R. Co. v. Mottley*, and as such it is often referred to as the "*Mottley* Rule."

**Federal and state courts also have concurrent subject-matter jurisdiction over many issues, allowing parties to choose whether to litigate in a federal or state tribunal.  The plaintiff can establish that the Federal Court should have the jurisdiction over the matter as in this case federal questions are being challenged.**

Under 28 U.S.C. § 1441 (b), "[t]he two requisites of removal are that the action was properly commenced in state court and that it could have been originally commenced in

2

federal court." Nuclear Eng'g Co. v. Scott, 660 F.2d 241, 248 (7th Cir. 1981). Furthermore, "the burden of establishing federal jurisdiction falls on the party seeking removal." Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993). Since there is no doubt that the present matter was properly commenced in state court, the only issue is whether it could have been commenced in federal court.

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[F]or a claim to arise 'under the Constitution, laws, or treaties of the United States,' 'a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one of the plaintiff's cause of action.'" Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125, 127 (1974) (citation omitted); accord Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 817 (1986) (stating that "[f]ederal jurisdiction cannot be based on a frivolous or insubstantial federal question"). Even when a plaintiff asserts several bases for relief in his Complaint, so long as one of those bases depends exclusively on federal law and is not a frivolous claim, federal question jurisdiction exists. See Davis v. Rodriguez, 106 F.3d 206, 208-09 (7th Cir. 1997) (distinguishing a claim where the federal question is an independent basis for relief from one in which the federal question is but an element of a claim for relief based on state law).

In Davis, the Plaintiff first argues that the federal question presented in his Complaint is not an essential element of his claim because he could find complete relief without reliance on federal law. While Plaintiff's premise is true, the possibility for complete relief on state law grounds is insufficient to defeat federal question jurisdiction. See Davis, 106 F.3d at 208.2.

Similarly, The Plaintiff Theodora Antar also suggests that because the state courts have concurrent jurisdiction to hear federal constitutional issues, her reference to the Federal Constitution is subordinate to her state law claims. However, the existence of concurrent jurisdiction for state and federal courts in actions arising under the Constitution, laws, or treaties of the United States does not itself bar removal. See, e.g., Ullmo v. Gilmour

Acad., 273 F.3d 671, 680 (6th Cir. 2001). The Plaintiff Theodora Antar's decision to assert federal law as an independent basis for relief creates a federal question that is not merely collateral to a question of state law. Indeed, claims by government employees that they were deprived of a property interest in their jobs without due process are commonly adjudicated in federal courts. Federal jurisdiction would have existed under 28 U.S.C. § 1331 had the original Complaint been filed in Federal court.

The Plaintiff Theodora Antar has withdrawn the matter AC46588 from the State of Connecticut Appellate Court in an attempt to remove it to the Federal District Court. The Plaintiff also filed a notice of removal in the Appellate Court after filing said notice in the Federal District Court. Rather than acknowledging the actions of the Plaintiff as a removal of the case, the Appellate Court dismissed the appeal and disposed it as withdrawn by the Plaintiff. Since, then, the Plaintiff has filed a motion to reinstate said appeal again. Rule 62.1 and its appellate counterpart, Rule 12.1, work in tandem to enable the district court, after it has lost jurisdiction due to a pending appeal, to advise on an unresolved issue with the appellate court's consent. It also conserves judicial and client resources by streamlining the issues that will ultimately be heard by the appellate court.

The text of Rule 62.1 is fairly straightforward: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a).
If the district court takes option 3 and determines that it would either grant the motion or that it raises a substantial issue, the movant must notify the appellate court clerk. *Id*. at 62.1(b); Fed. R. App. P. 12.1(a). At that point, the appellate court may grant a limited remand for the district court to consider the motion while retaining jurisdiction over the pending appeal. At this stage this Court will retain the Federal jurisdiction over this matter.

## Background and Procedural History

Plaintiff initiated a court action in September of 2019 in New Haven Superior Court to obtain court ordered child support payments, legal custody, and a visitation schedule for the parties' minor child Angelina Lodice (A.L.). The parties attended hearings on 11/5/2019 and 11/7/2019 and a final judgment was subsequently entered which ordered Mr. Lodice to pay 50% of all childcare and medical payments, and $120.00 per week in child support to the Plaintiff Theodora Antar. The court also ordered joint custody between the parties and primary residency with the Plaintiff Theodora Antar. Visitation was ordered to be worked out between the parties on a week-by-week basis, and Mr. Lodice was also ordered to allow Plaintiff to obtain a passport for Angelina. The parties then entered into an agreement without court appearance on 6/18/2021 and modified the visitation schedule to set a specific schedule for the Defendant and specify parenting arrangements regarding holidays and other special events.

In November of 2021, Plaintiff filed a motion for contempt for the Defendant's non-payment of child support and a motion for modification to increase the child support amount as the Defendant was making substantially more income at the time.

In March of 2022, both parties filed post-judgment motions for modification of custody/visitation/access as well as contempt motions. Most of these motions were resolved by agreement in April of 2022, however subsequently several other contempt and modifications were filed by both of the parties. A 2-hour hearing took place on 4/5/23 and another 2-hour hearing took place on 5/25/23 regarding some, but not all, of the post-judgment motions that were pending at the time.

At the end of the 5/25/23 hearing, a "temporary" order was put in place that was said to give the Defendant sole legal and sole physical custody of the minor child and stated that the Plaintiff-Appellant was to be "supervised under conditions as determined by the father" and a court date was set for 6/15/23. The judge stated that the temporary order would last for one week but the follow up court date was scheduled for three weeks away.

Between 5/25/23 to 6/15/23, the Plaintiff filed the appeal AC46588 along with the file AC46666 in the Connecticut Appellate Court in the form of mandamus. The plaintiff also filed a motion for disqualification of judicial authority and several other post-judgment

motions, including an emergency ex-parte motion for custody of the minor child, motion for modification, motion for contempt, and several emergency applications for relief from abuse. The emergency applications were filed in other courts such as the Milford Superior Court and the New Britain Superior Court and were all transferred sua sponte back to New Haven to be heard in front of the same judge that was the subject of both the mandamus and the motion for disqualification. All of those motions were set to be heard on 6/15/23 at 2:00PM.

On 6/15/23, none of the aforementioned motions were allowed to be heard. The only thing that took place was the testimony of two witnesses who were subpoenaed sua sponte by the court. The Court provided absolutely no notice to Plaintiff of these witnesses. The Court also denied the Plaintiff the right to cross-examine the witnesses and neither of the witnesses were experts.

Since 6/15/23 to the present date, the Court has engaged in further intimidation and other actions which have violated the Plaintiff's due process and procedural due process rights. The Court has prevented the Plaintiff from filing any motions for modification of the custody, visitation, or child support orders. The Court has also prevented the Plaintiff from filing any emergency ex-parte motions of custody or visitation, even in the presence of the current emergency situation of A.L. being isolated and subjected to psychological and emotional abuse and neglect.

Not only has the New Haven Superior Court denied the Plaintiff the right to transfer the case to another JD, but they have also denied the Plaintiff the right to file any motions without a request for leave, which does not comport with any state statute to allow such a restriction.

Judge Jane Grossman has denied the Plaintiff's repeated requests for leave to file emergency modification of custody and has retaliated substantially at an increased level over the past eleven weeks since her initial order was set into place.

Furthermore, Judge Jane Grossman has instructed both the magistrate court as well as the Clerk's office to ensure that any and all motions, pleadings, or other filings made by me be immediately forwarded directly to her for the purpose of blocking and rejecting the Plaintiff from filing said documents.

To date, the Plaintiff has been denied the right to a trial, the right to discovery, the right to file motions to modify or hold the defendant in contempt, and the right to file any other motions without the consent of Judge Jane Grossman.

Judge Grossman has also taken full control over the magistrate matter that the Plaintiff has which is a IV-D magistrate docket that should be dealt with separately than the docket that she presides over.

The Plaintiff has attempted to file a complaint with the Judicial Review Counsel, has filed a motion for disqualification, and has served the Defendant Judge Jane Grossman in her official capacity with the writ of mandamus contained within this docket AC46588 in addition to a temporary application for order of mandamus, all of which Judge Grossman has ignored. The Plaintiff now has no adequate remedy at law to change or plead anything within the case and her rights have deprived and she has been diminished significantly as a party within her own action.

## SPECIFIC FACTS UPON WHICH THE PLAINTIFF-APPELLANT RELIES

The Plaintiff relies on the fact that Judge Jane Kupson Grossman denied her the right to due process and the right to a fair hearing on multiple occasions. Judge Jane Grossman's biased and prejudiced decision to make a drastic court order sua sponte that forced a 4-year-old young girl to leave the only home she ever knew with her mother and older sister where she lived as her primary residence for four years and go to live with her father who has a long history of violence, criminal history, and substantiations of neglect and abuse with DCF for neglecting his other children as based solely on her hatred and bias against the Plaintiff.

The Defendant failed to comply with several court orders, such as: refusing to pay child support, refusing to pay for court-ordered childcare and medical costs, refusing to comply with court orders to attend mediations for a custody evaluation, refusing to sign releases for prior mental health providers to access mental health information for a custody evaluation, refusals to comply with court ordered discovery and mandatory disclosure, refusals to comply with orders to produce previously ordered discovery and disclosure, and continuing to harass and psychologically abuse the Plaintiff throughout the process

of litigation abuse as a form of coercive control in violation of statutory laws set forth in Public Act 21-78, The Best Interest of the Child Standard, and other statutes regarding custody, visitation, and the modification of existing orders without agreement of the parties.

Judge Jane Grossman ignored all 17 factors of the "Best Interest of the Child Standard" and made her decision to give Plaintiff supervised visitation of her child with no set schedule and leave it up to the entire discretion of an individual who she was the protected party of a protective order with based solely on her bias, prejudice, and dislike of the Plaintiff.

### LEGAL GROUNDS UPON WHICH THE PLAINTIFF-APPELLANT RELIES

In accordance with state, federal, and constitutional laws, the Plaintiff relies on the fact that her constitutional rights were violated by the Superior Court of New Haven and in particular by all orders entered into by the Honorable Jane Kupson Grossman.

All of the orders made by Judge Grossman were in violation of constitutional and statutory provisions, in excess of the statutory authority, made upon unlawful procedure, error of law, clearly erroneous in view of reliable, probative, and substantial evidence on the whole record, and/or arbitrary or capricious or characterized by abuse of discretion, bias, or clearly unwarranted exercise of discretion.

### Violation of Plaintiff's Due Process rights warrants removal of the case to Federal Court:

### Procedural Due Process Civil

SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

First, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."[752] Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests.[753] The core of these requirements is notice and a hearing before an impartial tribunal. Due process may also require an opportunity for confrontation and cross-examination, and for discovery; that a decision be made based on the record, and that a party be allowed to be represented by counsel.

The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. . . . At the same time, it preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." Thus, a showing of bias or of strong implications of bias was deemed made where a state optometry board, made up of only private practitioners, was proceeding against other licensed optometrists for unprofessional conduct because they were employed by corporations.

In addition, although "[p]ersonal bias or prejudice 'alone would not be sufficient basis for imposing a constitutional requirement under the Due Process Clause,'" there "are circumstances 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" These circumstances include "where a judge had a financial interest in the outcome of a case" or "a conflict arising from his participation in an earlier proceeding." In such cases, "[t]he inquiry is an objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'"

Relying on *Caperton*, which the Court viewed as having set forth an "objective standard" that requires recusal when the likelihood of bias on the part of the judge is "too high to be constitutionally tolerable," the *Williams* Court specifically held that there is an impermissible risk of actual bias when a judge had previously had a "significant,

9

personal involvement as a prosecutor in a critical decision regarding the defendant's case." The Court based its holding, in part, on earlier cases which had found impermissible bias occurs when the same person serves as both "accuser" and "adjudicator" in a case, which the Court viewed as having happened in *Williams*. It also reasoned that authorizing another person to seek the death penalty represents "significant personal involvement" in a case,

### **Confrontation and Cross-Examination**

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealously," the individual's right to show that it is untrue depends on the rights of confrontation and cross-examination. "This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny." Judge Jane Grossman denied the plaintiff the right to cross-examine witnesses such as the Defendant Matthew Lodice, the DCF worker subpoenaed sua sponte by the court, and the police officer subpoenaed sua sponte by the court, all of which the Plaintiff has the constitutional right to cross-examine.

On numerous occasions, Judge Grossman denied the Plaintiff the right to be sworn in to testify, the right to testify, the right to cross-examine family relations officers or other witnesses, and the right to confront the defendant on his false and damaging claims.

### **Discovery**

The Court has never directly confronted this issue, but in one case it did observe in *dictum* that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." Some federal agencies have adopted discovery rules modeled on the Federal Rules of Civil Procedure, and the Administrative Conference has recommended that all do so. There appear to be no cases, however, holding they must, and there is some authority that they cannot absent congressional authorization.

Decision on the Record. Although this issue arises principally in the administrative law area, it applies generally. "[T]he decisionmaker's conclusion . . . must rest solely on the legal rules and evidence adduced at the hearing. To demonstrate compliance with this elementary requirement, the decisionmaker should state the reasons for his determination and indicate the evidence he relied on, though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law." Suilloin v. Walcott (1978)

In this case, the Plaintiff Theodora Antar was deprived of her right to discovery and Judge Grossman violated state, constitutional and federal laws by entering in court orders that stated that the Plaintiff was not allowed to "possess, view, disseminate" any of the mandatory disclosure documents that were provided to her in the form of discovery by the defendant. Discovery in the form of mandatory financial disclosure documents, written interrogatories, and other essential pre-trial elements of due process were either never performed or never complied with by the defendant and thus the Plaintiff was stripped of her right to discovery in that the Judge made final orders post-judgment without any pre-trial or official trial taking place.

Furthermore, Judge Grossman modified a post-judgment order without the Defendant first proving through a preponderance of the evidence that a substantial material change had occurred that would warrant or justify said modification.

A due-process violation occurs when a state-required breakup of a natural family is founded solely on a "best" interests" analysis that is not supported by the requisite proof of parental unfitness.  434 U.S. 246, 255 (1978)

Such lawsuit deserves to move forward to discovery in the Federal Court as the violation of plaintiff's procedural rights damaged by the unlawful, unconstitutional acts by the State Court acts were not done in good faith, but deliberate, as it was never proven that the Plaintiff was deemed unfit in a court of law.

## The Deprivation of a Federally Protected Right.

In a number of broadly worded counts, the Plaintiff seeks to satisfy the first element, deprivation of a federal right, by alleging violations of her rights arising under the Fourth

Amendment, the Fifth Amendment, the Seventh Amendment, the Eighth Amendment and the Due Process and Privileges and Immunities clauses of the Fourteenth Amendment.

At a minimum, a plaintiff must set forth facts "as to who did what to whom, when, where, and why . . . ." See Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).

The Plaintiff hereby requests that the case AC46588 to be remanded to Federal Court as the Plaintiff Theodora Antar has shown good cause for this case and the request was done in good faith. Plaintiff will upon remand of this case file a federal injunction for violation of her constitutional rights as stated above.

Respectfully submitted,

is/ Theodora F. Antar

*Petitioner, Pro Se*

856 Shagbark Drive, Orange, CT, 06477
theodoraantar@gmail.com (203)273-8419

## **CERTIFICATION**

I hereby certify that on August 4, 2023, a copy of the foregoing Response by plaintiff to Show Good Cause was filed electronically.

Sent Electronically to:

Matthew Lodice

48 Quarry Hill Rd, Waterbury, CT, 06706

matthewlodice@gmail.com